UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICK D. FOX,<br><br>                    Plaintiff,<br><br>          v.<br><br>EXPERIAN INFORMATION<br>SOLUTIONS, INC.,<br><br>                    Defendant. | No.  1:22-cv-01197-DAD-SCR<br><br>ORDER GRANTING IN PART<br>DEFENDANT'S MOTION TO EXCLUDE<br>PLAINTIFF'S EXPERT OPINION AND<br>TESTIMONY<br><br>(Doc. Nos. 83, 84) |

This matter is before the court on defendant Experian Information Solutions, Inc.'s motion to exclude or limit the expert opinion and testimony plaintiff's expert.  (Doc. Nos. 83, 84.)  On June 16, 2025, the motion was taken under submission pursuant to Local Rule 230(g).  (Doc. No. 99.)  For the reasons explained below, defendant's motion will be granted in part.

**BACKGROUND**

**A.      Factual Background**

In 2022, plaintiff Rick Fox received a letter from his student loan provider that "extended condolences to Plaintiff's family concerning Plaintiff's death."  (*Id.* at ¶ 10.)  Several weeks later, plaintiff learned that his insurance benefits through the Department of Veteran Affairs ("VA") had been terminated after the VA received a report that plaintiff was deceased.  (*Id.* at ¶ 12.)  On

/////

1

July 29, 2022, plaintiff discovered that the Social Security Administration ("SSA") had marked plaintiff as "deceased." (*Id.* at ¶ 16.) Plaintiff later discovered that both Equifax and Tran Union were reporting plaintiff as deceased on a Discover Bank account listed on his consumer reports. (*Id.* at ¶¶ 25–41.) After disputing this designation, plaintiff alleges that he received a communication from Experian that the Discover Account had been corrected (*id.* at ¶ 45), and, because credit bureaus share information, plaintiff assumed that Trans Union would correct the mistake in its report as well (*id.* at ¶ 47). On August 15, 2022, plaintiff applied for a car loan with five non-party entities, each of which obtained a copy of plaintiff's Experian credit report, and all five loan applications were ultimately denied. (*Id.* at ¶¶ 49–53.) Plaintiff alleges on information and belief that all five applications were denied because plaintiff was still being reported as "deceased" on his consumer reports. (*Id.* at ¶ 54.)

**B.    The Expert's Report**[1]

Plaintiff has proffered the opinion of Evan Hendricks ("Hendricks") in support of his claims brought in this case. Hendricks has a Bachelor of Arts in an unspecified major from Columbia University. (84-1 at 28.) He previously served as a consultant for both the SSA from 1998 to 2002 and the U.S. Postal Service in 2002. (*Id.* at 24.) Hendricks also served on the Experian Consumer Advisory Counsel through which he offered "non-binding advice and discuss[ed] a host of consumer reporting, marketing[,] and other privacy-related topics." (*Id.* at 23.) He wrote the book *Credit Scores and Credit Reports: How the System Really Works, What You Can Do* ("*Credit Scores and Credit Reports*"). (*Id.* at 25.) Hendricks has also given many presentations on the FCRA at conferences offering continuing legal education and other professional seminars. (*Id.* at 26–27.) Hendricks has served as an FCRA expert witness since 1992 (*id.* at 24), has testified as an expert in at least 25 trials in both federal and state court (*id.* at 29), and has testified before Congress and the Federal Trade Commission ("FTC") on credit reporting practices (*id.* at 25). In his expert report issued in connection with this case, Hendricks states that his opinions are based on: (1) his review of the complaint, deposition of Christina

---

[1] The facts in this section are drawn from the Hendricks expert report and the *curriculum vitae* attached thereto which recites his qualifications as an expert. (Doc. No. 84-1.)

Hamilton and exhibits, and Bates-stamped documents produced by "Experian, Plaintiff, Santander and Fox"; (2) his general reliance on the FCRA, *Fair Credit Reporting* and *Fair Credit Reporting Act* by the National Consumer Law Center, and his own book *Credit Scores and Credit Reports*; and (3) his 44 years of professional experience in privacy and consumer reporting. (*Id.* at 50.)

## C.   PROCEDURAL BACKGROUND

On September 21, 2022, plaintiff filed a complaint initiating this action against defendant Experian Information Solutions, Inc. (Doc. No. 1.) Therein, plaintiff asserts the following four causes of action: (1) violation of 15 U.S.C. § 1681e(b) under the Fair Credit Reporting Act ("FCRA"); (2) violation of 15 U.S.C. § 1681i under the FCRA; violation of California Civil Code § 1785.14 under the Consumer Credit Reporting Agencies Act ("CCRAA"); and (4) violation of California Civil Code § 1785.16 under the CCRAA. (*Id.* at ¶¶ 71–111.) On May 30, 2025, defendant filed the pending motion to exclude or limit the opinion and testimony of Hendricks. (Doc. Nos. 83, 84.) On the same day, the parties filed cross motions for summary judgment, both of which remain pending. (Doc. Nos. 85, 89.) On June 13, 2025, plaintiff filed an opposition to the pending motion to exclude or limit expert opinion and testimony. (Doc. No. 98.) On June 23, 2025, defendant filed a reply thereto. (Doc. No. 100.)[2]

## LEGAL STANDARDS

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;

---

[2] Defendant appears to have inadvertently filed its same reply brief twice. *Compare* (Doc. No. 100), *with* (Doc. No. 101).

**(c)** the testimony is the product of reliable principles and methods; and

**(d)** the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993) (noting that Rule 702 is the primary locus of the trial court's obligation to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable"). "Expert testimony is admissible pursuant to Rule 702 if it is both relevant and reliable." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007) (citation omitted). "It is the proponent of the expert who has the burden of proving admissibility." *Id.* (quoting *Lust By & Through Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996)). The court's gatekeeping role applies to "all forms of expert testimony, not just scientific testimony." *White v. Ford Motor Co.*, 312 F.3d 998, 1007 (9th Cir. 2002), *opinion amended on denial of reh'g*, 335 F.3d 833 (9th Cir. 2003). When non-scientific expert testimony is proffered, "reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000); *see e.g.*, *Sandigo v. Ocwen Loan Servicing, LLC*, No. 17-cv-02727-BLF, 2019 WL 2579341, at *8 (N.D. Cal. June 24, 2019) (finding Hendricks qualified to provide expert testimony regarding a loan service provider's policies or procedures and how they comported with industry standards because of his past experience with the defendant and credit reporting practices). "It is the proponent of the expert who has the burden of proving admissibility." *Cooper*, 510 F.3d at 942 (quoting *Lust By & Through Lust*, 89 F.3d at 598).

**DISCUSSION**

In its motion, defendant seeks to exclude the opinion and testimony of Hendricks regarding: (1) defendant's policies and procedures surrounding its product, Fraud Shield; (2) plaintiff's damages; (3) defendant's knowledge, motivations, intentions, state of mind, and subjective beliefs; (4) prior cases, administrative actions, and consent orders; and (5) the reasonableness of defendant's policies and procedures. (Doc. No. 84 at 8–17.) Below, the court addresses each of these arguments in turn.

4

## A.     Fraud Shield[3]

Defendant contends that Hendricks' opinion regarding its Fraud Shield product must be excluded because Hendricks is unqualified to opine on it. (Doc. No. 84 at 8.) At bottom, defendant argues that Hendricks' opinion can be summarized as "it was unreasonable for Experian to notify subscribers that Plaintiff's SSN appeared in a database maintained by the federal government." (*Id.*) Defendant points to two assertions that Hendricks makes in his expert report: (1) that defendant "lack[s] . . . any procedures relating to the accuracy of" plaintiff's social security number as it appears in the federal government's database; and (2) that defendant "has fail[ed] to implement any procedures designed to identify inaccuracies in Fraud Shield notices." (*Id.*) Defendant contends that the court should exclude this testimony and that Hendricks is "entirely unqualified to offer these sorts of opinions." (*Id.*) Defendant contends that Hendricks has admitted that the entirety of his knowledge about the Fraud Shield product stems from this case, not from his direct experience or independent research. (*Id.*) Additionally, according to defendant, Hendricks does not offer a reliable opinion regarding the reasonableness of defendant's procedures because in forming his opinion on this topic, Hendricks reviewed only one procedure manual that he conceded at his deposition was not impactful in the forming of his opinion. (*Id.* at 9–10.)

In opposition, plaintiff contends that the same argument advanced by defendant here has previously been rejected by another district court when it found that Hendricks is qualified to testify as an expert about particular credit reporting procedures even if he has not previously opined on or has not previously had direct experience with the procedures. (Doc. No. 98 at 12–13) (citing *Ferrin v. Experian Info. Sols., Inc.*, No. 20-cv-00841-NEB-TNL, 2023 WL 3591931 (D. Minn. Apr. 24, 2023).

---

[3] Fraud Shield is a product that defendant offers to lenders in addition to credit reports to help them attempt to detect and prevent loss. (Doc. Nos. 84 at 8; 84-1 at 4.) Specifically, and most relevant to this case, Fraud Shield informs lenders who subscribe to the product of any social security number that the SSA is reporting as "deceased." (Doc. No. 84 at 8; 84-2 at 3.) At least two of the lenders in this action subscribed to Fraud Shield and have indicated that they denied plaintiff's credit applications due, at least in part, to the deceased notation that was made in plaintiff's credit report. (Doc. No. 84-1 at 3–4.)

5

As a preliminary matter, Hendricks is not automatically unqualified to offer an opinion about the Fraud Shield product just because he lacks direct experience with it. *See In re Twitter, Inc. Sec. Litig.*, No. 16-cv-05314-JST, 2020 WL 13863616, at \*3, \*5 (N.D. Cal. Jan. 28, 2020) ("Whether [an expert's] experience is an exact fit with the particulars of this case is a matter for cross-examination.") (citation omitted) (collecting cases). As noted above, Hendricks has over four decades of experience in privacy and credit reporting practices – specifically in the context of FCRA litigation. (Doc. No. 84-1 at 22.) During his time as a consultant for the SSA, he reviewed policies and practices regarding the collection, use, and disclosure of personal data and SSNs, which encompasses the service that the Fraud Shield product offers to its subscribers. (*Id.* at 24.) In working with Congress, Hendricks has been involved in hearings that specifically involved erroneous deceased designations of consumers. (*Id.* at 12–13.) Based on this experience, Hendricks is clearly qualified as an expert in credit reporting. *Pena v. Experian Info. Sols., Inc.*, No. 8:22-cv-01115-SSS-ADSX, 2024 WL 4868285 (C.D. Cal. Nov. 13, 2024) (collecting cases where "other courts have found Hendricks to be a reliable and qualified expert on the credit reporting industry.").

Even more specifically, the Fraud Shield product is "within the reasonable confines of his subject area" because that product is part of the credit reporting process. Therefore, the court concludes that Hendricks is qualified to offer an expert opinion about the product and how it functions. *Avila v. Willits Env't Remediation Tr.*, 633 F.3d 828, 839 (9th Cir. 2011) (citing *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969–70 (10th Cir. 2001)); *see also Bona Fide Conglomerate, Inc. v. SourceAmerca*, No. 3:14-cv-00751-GPC-AGS, 2019 WL 1369007, at \*5 (S.D. Cal. Mar. 26, 2019) (concluding that an expert with over twenty years of experience in government contracting was permitted to opine on how a particular program functioned despite having no previous experience with it); *see also Moribe v. Am. Water Heater Co.*, No. 21-cv-00254 HG-WRP, 2023 WL 8998745, at \*6 (D. Haw. Dec. 28, 2023) ("Courts generally do not require that a witness's expertise be precisely matched to the questions at issue."). Hendricks lack of direct experience with the Fraud Shield product goes to the weight, not admissibility of his expert opinion. *See Karmelich v. Transportacion Maritima Mexicana*

6

*S.A. de C.V.*, 114 F.3d 1194, 1997 (9th Cir. 1997); *see also SourceAmerca*, 2019 WL 1369007, at *5 ("A lack of specialization as to the AbilityOne acquisitions process goes to the weight of Mr. Jans's testimony, not to its admissibility.").

As to reliability, where, as here, the expert's opinion is non-scientific in nature, "reliability depends heavily on the *knowledge and experience* of the expert, rather than the methodology or theory behind it." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (citation omitted). In the excerpt from Hendricks' deposition that defendant attaches in support of its motion, Hendricks clearly testified that he is offering an opinion regarding the *absence* of a policy or procedure to verify the accuracy of a deceased designation. (Doc. No. 84-2 at 10.) As noted above, in his report Hendricks stated that he formed his opinions in this case based on, among other things, the allegations of plaintiff's complaint and his own extensive experience in the credit reporting industry. These facts establish a sufficient basis as to the reliability of his opinion. *Bon Appetit Danish, Inc. v. Delta Sys. & Automation LLC*, No. 2:23-cv-04305-HDV-SK, 2025 WL 1091941, at *2 (C.D. Cal. Mar. 17, 2025) (finding an expert's review of complaint and corresponding documents sufficient to establish reliability); *Valenzuela v. Equifax Info. Servs. LLC*, No. 13-cv-02259-PHX-DLR, 2015 WL 6811585, at *3 (D. Ariz. Nov. 6, 2015) (finding Hendricks qualified to offer expert opinions about Equifax's policies and procedures "because of his experience with credit reporting agencies, including his expert witness experience in previous Equifax cases."). Ultimately, "questions regarding the nature of" the evidence that Hendricks relies upon goes once again "more to the 'weight' of his testimony—an issue properly explored during direct and cross-examination." *Bon Appetit Danish, Inc.*, 2025 WL 1091941, at *2 (citation omitted).

Accordingly, defendant's motion to exclude or limit is denied to the extent that it seeks to exclude Hendricks' expert testimony regarding the Fraud Shield product.

**B.     Damages**

Defendant also argues that, as evidenced by his report and deposition testimony, Hendricks is not qualified to offer expert opinion or testimony on plaintiff's damages. (Doc. No. 84 at 10.) Specifically, defendant argues that Hendricks' opinions on damages are "entirely

unreliable" because the method he used in forming his opinion in this regard is not grounded in research or data, but, instead, is "nothing more than an unspecific, speculative checklist of his own invention." (*Id.* at 11.)  Defendant also contends that Hendricks' opinions as to damages are unreliable because he did not review certain documents that would have undermined his opinion that the Fraud Shield product inhibited plaintiff's credit eligibility. (*Id.* at 11–12.)  Moreover, defendant asserts that Hendricks is unqualified to render an expert opinion on damages on a general level because:  (1) he lacks a basis to offer an opinion on how creditors view or interpret defendant's credit and Fraud Shield reports or how those reports would impact any determination on plaintiff's creditworthiness; and (2) Hendricks lacks any qualifications to testify about any physical or emotional harm that plaintiff has suffered. (*Id.* at 12–13.)

In opposition, plaintiff contends that expert opinions can be based on experience alone and defendant's arguments misstate the nature of the opinion proffered by Hendricks regarding damages.  (Doc. No. 98 at 13–15.)  Instead, plaintiff argues, Hendricks intends to offer his opinion to inform the jury about the different types of damages that typically flow from inaccurate credit reporting, including creditworthiness impairment; loss of time, money, and opportunities; and specific physical or emotional consequences, all of which, courts have previously permitted Hendricks to testify about.  (*Id.* at 14–15) (citing cases).

As a preliminary matter, Hendricks' failure to review certain materials again bears on the weight of his opinion, not its admissibility.  *Arriaga v. Logix Fed. Credit Union*, No. 18-cv-09128-CBM-AGR, 2022 WL 3052318, at *3 (C.D. Cal. Apr. 22, 2022) ("Moreover, Logix's contention that Counts failed to review certain materials goes to weight, not admissibility, and Logix may cross-examine Counts regarding the materials he failed to review at trial."); *Caruso v. Solorio*, No. 1:15-cv-00780-AWI-EPG PC, 2021 WL 22498, at *22 (E.D. Cal. Jan. 4, 2021) (same).

Regarding damages, "[c]ourts have been divided as to whether Hendricks can testify about these issues." *Ferrin*, 2023 WL 3591931, at *9 (collecting cases).  However, those courts that have permitted Hendricks to offer expert opinions regarding damages have concluded that he "may offer expert testimony as to typical consequences resulting from issues with consumer

8

reports." *Smith v. Result Matrix, Inc.*, No. 21-cv-05380-BHS-SKV, 2022 WL 2237289, at *8 (W.D. Wash. June 22, 2022) (collecting cases).

In his expert report in this case, Hendricks has conceded that, other than the impact on plaintiff's creditworthiness, "most, if not all, of the testimony regarding [plaintiff's] specific[,] actual damages will come from fact witnesses." (Doc. No. 84-1 at 20.) Nonetheless, Hendricks' report addressing damages largely consists of a list of eight categories of "typical negative impacts of unreasonable credit report inaccuracy" that he believes will aid the fact finder in assessing damages in this case, given his belief that plaintiff experienced "many" of these categories of harm. (*Id.* at 21.) Those eight categories are: (1) inaccurate descriptions of creditworthiness to third parties; (2) improper denial of credit; (3) loss of time, energy, and opportunities due in part to correcting the mistakes on one's credit report; (4) wrongfully receiving debt collection calls; (5) being chilled from applying for credit; (6) sleeplessness and physical symptoms; (7) sense of helplessness and loss of control over personal data; and (8) emotional distress. (*Id.* at 20.)

The court concludes that Hendricks is qualified to testify regarding the categories of damages that individuals often suffer from inaccurate credit reporting. *See Sandigo*, 2019 WL 2579341, at *8 ("Given his extensive experience in the field, Mr. Hendricks can reliably testify as a witness on the impacts of harm to creditworthiness on consumers. He has been allowed to testify about such issues in the past."); *see also Ma v. Equifax Info. Servs., LLC*, 288 F. Supp. 3d 1360, 1366 (N.D. Ga. 2017) (permitting Hendricks to testify about damages that individuals typically suffer from credit reporting inaccuracies); *Scudder v. SoFi Lending Corp*, No. 3:21-cv-00741-TJC-JBT, 2023 WL 11951699, at *1 (M.D. Fla. Sept. 19, 2023) (permitting Hendricks to testify about "general FCRA damages"). However, Hendricks will not be permitted to offer any testimony or opinion regarding the *specific* damages that plaintiff has suffered in this case. *Williams v. First Advantage LNS Screening Sols. Inc*, No. 1:13-cv-00222-MW-GRJ, 2015 WL 9690018, at *4(N.D. Fla. Mar. 31, 2015) (prohibiting Hendricks from opinion on the specific damages suffered by the plaintiff but permitting him to testify "as to ordinary, industry-standard

/////

9

consequences that flow from inaccurate consumer reporting to the extent he possesses such knowledge.").

Accordingly, defendant's motion to exclude is denied to the extent it seeks to preclude Hendricks from opining as to the categories of damages that individuals often suffer from inaccurate credit reporting.

**C.     Defendant's State of Mind**

Defendant next argues that Hendricks has proffered opinions regarding defendant's knowledge, motivations, intentions, objective state of mind, and subjective beliefs which "plainly fail to satisfy Rule 702" of the Federal Rules of Evidence. (Doc. No. 84 at 14.)  Defendant further argues that courts across the country have previously precluded Hendricks from offering opinions about these very issues. (*Id.* at 15.)

In opposition, plaintiff contends that Hendricks merely offers opinions about pertinent industry standards that were in place when defendant developed and implemented the Fraud Shield product. (Doc. No. 98 at 15.)  Plaintiff argues that Hendricks opinion helps show that Congressional fact-finding, guidance from the FTC and Consumer Financial Protection Bureau, recommendations from the Consumer Data Industry Association, and past litigation would have placed any credit reporting agency on notice about reasonable procedures, such as cross-checking data, to be employed in order to ensure that consumer information is reported accurately. (*Id.* at 15–17.)

Upon review of the expert report, the court observes several instances in which Hendricks opines on defendant's state of mind. (*See e.g.*, Doc. No. 84-1 at 6 stating that "[o]nce Experian receives a deceased notation via Fraud Shield, Experian unquestionably accepts it, while effectively disregarding more compelling, contradictory information" and that defendant's "repeated failures in Plaintiff's case reflected its disregard of robust notice from FCRA enforcement authorities."; at 8 asserting that defendant "knows or should know that . . . subscribers to the Fraud Shield product will use that [information] in evaluating credit applications at least in part" and that "Experian's efforts . . . are deliberately designed to conceal

/////

10

Experian's failures to implement procedures to identify whether the information in the Fraud Shield is accurate or not.").

"Courts routinely exclude expert testimony as to intent, motive, or state of mind as issues better left to a jury." *Camenisch v. Umpqua Bank*, 763 F. Supp. 3d 871, 882 (N.D. Cal. 2025) (citation omitted). With respect to corporations, "the opinions of [expert] witnesses on the intent, motives, or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise." *Stanley v. Novartis Pharms. Corp.*, No. 11-cv-03191-JGB-OP, 2014 WL 12573393, at *6 (C.D. Cal. May 6, 2014) (alteration in original) (citation omitted). Accordingly, Hendricks will be prohibited from offering his opinions regarding defendant's state of mind, specifically, whether defendant acted with disregard or knowingly. *Smith*, 2022 WL 2237289, at *6 (prohibiting Hendricks from testifying that defendant acted with disregard); *Santos v. Experian Info. Sols., Inc.*, No. 19-cv-23084-W-T, 2021 WL 6144643 (S.D. Fla. Nov. 30, 2021) (prohibiting Hendricks from opining on whether Experian acted "knowingly").

However, Hendricks will not be precluded from offering expert testimony regarding industry standards regarding accurate credit reporting even if that testimony could reasonably reflect defendant's subjective awareness about those standards when it developed and launched the Fraud Shield product. *Cf. Bailey v. Experian Info. Sols., Inc.*, No. 1:21-cv-00465-BLW, 2023 WL 6317443, at *7 (D. Idaho Sept. 28, 2023) (permitting Hendricks to testify about industry standards regarding debt discharging even though it could "also reflect Experian's subjective awareness of that standard."), *modified on reconsideration*, No. 1:21-cv-00465-BLW, 2024 WL 914988 (D. Idaho Mar. 4, 2024).

**D.    Prior Actions**

Defendant argues that Hendricks' opinions should be excluded to the extent that he describes consent orders entered into by defendant's predecessor, prior cases, and administrative actions. (Doc. No. 84 at 15–16.) Defendant contends that this testimony, purportedly offered "[u]nder the guise of providing 'context' for the jury" is improper under Rule 702, and that other

/////

11

courts have previously barred Hendricks from offering such opinions.  (*Id.* at 15) (citing cases).  Plaintiff offers no opposition to defendant's argument in this regard.  (Doc. No. 98.)

As the proponent of Hendricks' testimony, plaintiff has the burden of establishing its admissibility.  *United States v. 87.98 Acres of Land*, 530 F.3d 899, 904 (9th Cir. 2008).  Plaintiff's failure to oppose defendant's motion on this issue alone constitutes grounds upon which to grant defendant's motion as to this proffered opinion testimony.  *MaxLite, Inc. v. ATG Elecs., Inc.*, No. 8:20-cv-01056-MCS-ADS, 2022 WL 16923391, at *5 (C.D. Cal. Aug. 7, 2022) (granting an unopposed *Daubert* motion).  Moreover, expert testimony as to prior actions, consent orders, and administrative actions "is unnecessary because no specialized knowledge or expertise is needed to understand the existence of those prior actions and to draw reasonable inferences from them."  *Bailey*, 2023 WL 6317443, at *4 (collecting cases) (internal quotation marks omitted).  District courts have generally precluded Hendricks from opining on prior cases, administrative actions, and consent orders involving defendant.  *See e.g.*, *Huizar v. Experian Info. Sols. Inc.*, No. 4:22-cv-00085-PPS, 2025 WL 3085049, at *7 (N.D. Ind. Nov. 5, 2025) (collecting cases, recognizing that "courts have routinely barred Hendricks from offering such testimony," and concluding that allowing Hendricks to offer testimony on this topic would both confuse the jury and unduly prejudice defendant); *Bailey*, 2023 WL 6317443, at *4 (precluding Hendricks from testifying about or attempting to interpret prior cases, administrative actions, or consent decrees because testimony about those prior actions "would not be particularly helpful to the trier of fact"); *Valenzuela*, 2015 WL 6811585, at *3 (precluding Hendricks from testifying about prior cases, consent decrees, or administrative actions because "[n]o specialized knowledge, skill, or experience is necessary to understand the existence and subjects of these prior cases, consent decrees, and administrative actions.").  The court concludes that expert testimony of this nature will not be helpful to the jury in this case.  Therefore, Hendricks' expert testimony pertaining to prior actions will be excluded pursuant to Federal Rule of Evidence 702.

Accordingly, Hendricks will not be allowed to testify about or offer opinions regarding prior cases, administrative actions, or consent decrees.

/////

12

**E.      Legal Conclusions**

Finally, defendant argues that Hendricks offers several opinions that involve legal conclusions on ultimate issues in this case and that should be excluded as impermissible under Rule 702 of the Federal Rules of Evidence.  (Doc. No. 84 at 16.)  Specifically, in its reply, defendant contends that Hendricks "appears positioned to opine" that Experian lacks adequate procedures for assuring accuracy, which "goes directly to the ultimate issue of 'reasonableness' on Plaintiff's § 1681e(b) claims."  (Doc. No. 100 at 6 (citing Doc. No. 84-1 at 5–16).)  In opposition, plaintiff argues that Hendricks' opinions do not constitute legal opinions; instead, they specifically focus on industry standards surrounding accurate consumer reporting, how industry groups understand reasonableness or accuracy of consumer reporting, and how these concepts are applied in the development of best practices.  (Doc. No. 98 at 17.)

"An opinion is not objectionable just because it embraces an ultimate issue."  Fed. R. Evid. 704.  "That said, 'an expert witness cannot give an opinion as to her *legal conclusion,* i.e., an opinion on an ultimate issue of law.'"  *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (citation omitted); *see also Zetz v. Bos. Sci. Corp.*, 644 F. Supp. 3d 684, 710 (E.D. Cal. 2022) ("The Ninth Circuit has repeatedly affirmed that an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law.") (internal quotation marks omitted) (citing *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017).  "Although it is well established that experts may not give opinions as to legal conclusions, experts may testify about industry standards[.]"  *King v. GEICO Indem. Co.*, 712 F. App'x 649, 651 (9th Cir. 2017).[4]

Because he is an expert on credit reporting, Hendricks may offer opinions regarding industry standards of credit reporting practices, how defendant's practices did or did not comport with those standards, and even what measures defendant could have implemented to improve credit reporting accuracy.  *Sandigo*, 2019 WL 2579341, at *8 ("However, as discussed, Mr. Hendricks is a proper expert witness on credit reporting practices and procedures.  He can testify

---

[4]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

13

as an expert under FRE 702 about whether Ocwen's policies or procedures comport with best practices or other requirements in credit reporting."); *Zabriskie v. Fed. Nat'l Mortg. Ass'n*, No. 13-cv-02260-PHX-SRB, 2016 WL 3653512, at *2 (D. Ariz. Apr. 22, 2016) ("The Court will not preclude Mr. Hendricks from testifying regarding the relevant industry standards for characterizing and reporting consumer credit data or describing how Fannie Mae's procedures comport with these standards."); *Malverty v. Equifax Info. Servs., LLC*, No. 8:17-cv-01617-T-27-AEP, 2019 WL 5549146, at *2 (M.D. Fla. Oct. 28, 2019) ("Hendricks is allowed to testify about what additional measures Equifax could have taken to ensure the accuracy of Rennick's consumer report, both prior to and following the disputes.  This could include whether Equifax's 'procedures match industry standards if he dissects the basis for his knowledge of industry standards, explains how he applied his experience to the facts and how such application yields his opinion.'").

Here, defendant simply cites an 11-page section of the expert report in arguing that Hendricks is offering impermissible legal conclusions.  (Doc. No. 100 at 6.)  However, it does not appear to the court that defendant seeks to exclude any specific opinions regarding the reasonableness of defendant's policies or procedures either at the summary judgment stage or at trial.  In resolving the cross motions for summary judgment, the court will disregard any legal conclusions that Hendricks offers.  Accordingly, defendant's motion to exclude Hendricks' expert testimony as improperly stating legal conclusions on ultimate issues in this case is denied without prejudice to the filing of an appropriately specific motion *in limine* prior to trial.

**CONCLUSION**

Accordingly,

1.     Defendant's motion to exclude or limit the expert opinion of Evan Hendricks is GRANTED IN PART as follows:

    a.     Defendant's motion to exclude Mr. Hendricks' testimony regarding the Fraud Shield product is DENIED;

    b.     Defendant's motion to exclude Mr. Hendricks' testimony regarding damages is DENIED;

14

  c. Defendant's motion to exclude Mr. Hendricks' testimony regarding defendant's state of mind is GRANTED to the extent described above in this order;

  d. Defendant's motion to exclude Mr. Hendricks' testimony regarding prior orders, administrative actions, and consent decrees is GRANTED; and

  e. Defendant's motion to exclude Mr. Hendricks' testimony regarding certain legal conclusions or ultimate issues is DENIED without prejudice to the filing of an appropriately specific motion *in limine* prior to trial.

IT IS SO ORDERED.

Dated: **March 31, 2026**     _____

                DALE A. DROZD
                UNITED STATES DISTRICT JUDGE